IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. HINES, III, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-5203 |
| | : | |
| TAMMY FERGUSON, *et al.*, | : | |
|     Defendants. | : | |

### MEMORANDUM

**TUCKER, J.**                                                                                                      **DECEMBER 7, 2021**

Currently before the Court is a Complaint filed by Plaintiff Robert Leroy Hines, III. Hines also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Hines leave to proceed *in forma pauperis* and dismiss his Complaint with leave to amend.

**I.**     **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

Some background is required to understand how this case came to be filed. In July 2019, the Court received a lawsuit filed by Robert L. Hines, III, an inmate who was incarcerated at SCI Phoenix, inmate number DQ-3846. *See Hines v. Ferguson*, Civ. A. No. 19-3139 (E.D. Pa.). The Complaint, which was filed pursuant to 42 U.S.C. § 1983, brought claims against Tammy Ferguson (Superintendent of SCI Graterford and SCI Phoenix), Mandy Sipple (Deputy Superintendent of those facilities), Secretary of Correction John Wetzel, and several John Doe officers responsible for moving inmate property when the inmate population was transferred from SCI Graterford to the newly constructed facility at SCI Phoenix. Hines asserted constitutional claims based on the loss of certain of his property during the move. The Court dismissed Hines's complaint without prejudice to him filing an amended complaint, *Hines v. Ferguson*, Civ. A. No. 19-3139, 2019 WL 3504239, at *5 (E.D. Pa. July 31, 2019), which he did.

The amended complaint repeated the claims in the initial complaint and added claims against a new defendant, Smart Communications, based on handling of mail at SCI Phoenix. The Court severed the mail-based claims into a new lawsuit, *Hines v. Ferguson*, Civ. A. No. 19-4521 (E.D. Pa.), and dismissed the remainder of the amended complaint in Civil Action Number19-3139 with prejudice. *Hines v. Ferguson*, Civ. A. No. 19-3139, 2019 WL 4772215, at *8 (E.D. Pa. Sept. 27, 2019). The second lawsuit was later dismissed without prejudice for failure to prosecute when Hines failed to either pay the fees or seek leave to proceed *in forma pauperis* as directed. *See Hines v. Ferguson*, Civ. A. No. 19-4521 (E.D. Pa.) (ECF No. 5).

On September 1, 2021, the Court received a letter signed by "Mr. Robert Leroy Hines" bearing the case number for the first case discussed above, Civil Action Number 19-3139. The letter, among other things, explained that the author had been incarcerated at the Chester County Prison during 2020 and, accordingly, did not receive any mail about the case. Civ. A. No. 19-3139 (ECF No. 10 at 2). The letter also discussed the conditions in which the author was confined while incarcerated at the Chester County Prison. In a September 21, 2021 order, the Court denied any request to reopen Civil Action Number 19-3139 to the extent the letter could be construed to contain such a request, and informed Hines that if he sought to proceed on new claims post-dating the dismissal of Civil Action Number 19-3139, he would be required to file a new lawsuit. *Id.* (ECF No. 11).

Prior to the entry of that order, Hines, using the name "Robert Leroy Hines III," had filed a new complaint and motion to proceed *in forma pauperis*. Since the complaint bore the caption of Civil Action Number 19-4521 and the motion to proceed *in forma pauperis* bore that case number, the filings were docketed in Civil Action Number 19-4521. In a November 22, 2021 Order, the Court concluded that, despite the use of the docket number and caption for Civil

Action Number 19-4521, it appeared that Hines was, in fact, attempting to bring a new civil case. Civ. A. No. 19-4521 (ECF No. 8).  Accordingly, the Court directed the Clerk to docket Hines's filings in a new civil action, *id.*, which the Clerk did by opening the instant civil action and docketing Hines's filings for review.  In the meantime, Hines had filed a second letter in Civil Action Number 19-3139 again explaining that he did not receive mail during an eight-month stay at the Chester County Prison, but also requesting permission to proceed in a new case (which request is satisfied by the docketing and consideration of Hines's claims here).  Civ. A. No. 19-3139 (ECF No. 12).

Now that Hines's Complaint is properly before the Court for review, it appears to the Court that the Plaintiff, Robert Leroy Hines III, is not, in fact, the same individual as Robert L. Hines, III, who filed Civil Action Numbers 19-3139 and 19-4521, even though the post-judgment filings in the 2019 cases bore the case numbers and captions for those cases.  The individual who filed the instant case was not incarcerated at the time of filing and provided a street address for service of Court orders.  The individual who filed Civil Action Numbers 19-3139 and 19-4521 remains incarcerated at SCI Phoenix according to the Pennsylvania Department of Corrections' inmate locator, and has a birth date that does not match the birth date on the medical records attached to the Complaint in the instant case.  (ECF No. 3 at 14-17.)[1] Furthermore, the handwriting and signature on the current Complaint do not match the handwriting and signature on the pleadings in Civil Action Numbers 19-3139 and 19-4521. Public dockets also indicate that these are two different individuals.  *Compare Commonwealth v. Hines*, CP-51-CR-0606671-1997 (C.P. Phila.) (reflecting a 1998 life sentence for murder associated with the younger Hines) *with Commonwealth v. Hines*, CP-15-CR-0003690-2020,

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

CP-15-CR-3689-2020, CP-15-CR-3688-2020, CP-15-CR-0000408-2019 (C.P. Chester) (reflecting recent criminal convictions associated with the elder Hines).

It is unclear how Hines (the Plaintiff in the instant case) became aware of Civil Action Numbers 19-3139 and 19-4521 or why he filed documents in those cases. Regardless, now that he is proceeding with his own civil action, *i.e.*, the current case, the matter can proceed. Going forward, Hines should communicate with the Court in this case, using the above case number, Civil Action Number 21-5203. He should not continue to file letters or other documents in the 2019 cases to which he is not a party.

As noted above, although Hines was apparently not the plaintiff in Civil Action Number 19-4521, his Complaint names the same Defendants: (1) Tammy Ferguson; (2) Mandy Sipple; (3) C.E.R.T. John Does (Correctional Emergency Response Team); (4) John Wetzel; and (5) Smart Communications. (ECF No. 3 at 1.) By marking the appropriate location on the form complaint that he used to prepare his pleading, Hines indicates that he is raising claims pursuant to the Court's federal question jurisdiction and diversity jurisdiction. (*Id.* at 2.)

Hines indicates that the events giving rise to his claims occurred while he was incarcerated at Chester County Prison during his eight-month stay that began on October 22, 2019.[2] (*Id.* at 3.) The events giving rise to Hines's claims began when an inmate who was transferred from the "odd block" to the "even side" was unable to sleep and appears to have been making noise. (*Id.*) When the inmate did not quiet down after having been asked, Hines threw a teacup and other items at the inmate. (*Id.*) According to Hines, he was protecting himself and other inmates from "noise" and did not cause any harm. (*Id.*)

---

[2] Hines's handwriting is often difficult to read and interpret. The Court has done its best to understand his allegations.

However, a guard became aware of Hines's behavior and informed Hines that he would be handcuffed and taken "to medical." (*Id.*) Hines appears to be alleging that the guard showed favoritism and did not act responsibly toward all of the inmates, but these allegations are unclear. (*Id.*) It also appears that Hines suffers from mental illness and various physical conditions and does not believe he was treated properly during this incident. (*Id.* at 3-4.) In that regard, he alleges that he told the guards that he was "sick & sleepy" and that he would "go to medical tomorrow," but that the guards who were present threw him from the top bunk bed, forced their feet into his chest, held his head, handcuffed him, and placed him in a chair to take him to the medical department. (*Id.* at 4.) Despite having been brought to the medical department, Hines alleges that he was not provided medical attention for (unspecified) injuries and that he was required to purchase his own medication through the commissary. (*Id.*) He also indicates that he "stopped all meds" because he thought nurses were changing the medications to harm him. (*Id.*) It also appears that Hines may have been sent to special or disciplinary housing where other inmates threw garment, water and human waste out of their cells. (*Id.*) At some point, Hines was sent to Norristown State Hospital. (*Id.* at 4-5.) He attached medical documents to the Complaint relating to appointments for knee pain, the relevance of which is unclear. (*Id.* at 14-17.)

The Court understand Hines to be bringing claims based on how the guards treated him while transporting him to the medical department and based on inadequate medical care. Hines appears to be seeking damages for his injuries. (*Id.* at 6.)

## II.     STANDARD OF REVIEW

The Court grants Hines leave to proceed *in forma pauperis* because it appears that he is incapable of prepaying the fees to commence this civil action. Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Hines is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

Hines's Complaint is best construed as raising civil rights claims, pursuant to § 1983, for excessive force and deliberate indifference to medical needs.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is unclear whether Hines was a pretrial detainee or a convicted and sentenced inmate at the time of the events in question.  Accordingly, the Court will address his claims under both the Eighth Amendment, which protects convicted and sentenced inmates from cruel and unusual punishment, and the Due Process Clause of the

Fourteenth Amendment, which protects pretrial detainees from unconstitutional punishment. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) ''the extent of injury inflicted'[3]; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). To state a due process violation based on excessive force, a detainee must allege facts to suggest plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at

---

[3] Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered . . . to state a claim for wanton and excessive force." *Brooks*, 204 F.3d at 104. Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id*. at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). However, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207. For purposes of supervisory liability,

---

[4] The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Hines's Complaint concerns events that took place while he was incarcerated at the Chester County Prison for an eight-month period beginning on October 22, 2019. However, the Defendants named in the Complaint are employees or officials of the Pennsylvania Department of Corrections, most of whom are or were employed at SCI Phoenix, and a company that contracts with the Department of Corrections to process mail. Accordingly, the named Defendants bear no relation to the allegations in the Complaint regarding the events that took place at the Chester County Prison. Since these Defendants were not personally involved in any constitutional violations that occurred at the Chester County Prison, and thus cannot be held

responsible for any harm caused to Hines during his incarceration there, the Court will dismiss Hines's claims against them.[5]

Furthermore, the factual allegations in the Complaint are unclear as to the events giving rise to Hines's claims because it is difficult to understand the "who, what, where, when and why' of [his] claim[s]." *See Gambrell v. S. Brunswick Bd. of Educ.*, Civ. A. No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019). That is particularly true with regard to Hines's deliberate indifference claim. Hines indicates that he suffers from various physical and mental conditions but it is not clear from his allegations what medication or other care was prescribed for him and what medication or other care he is claiming was improperly denied. Without further factual allegations about these matters, Hines has not stated a claim for deliberate indifference to his serious medical needs. In sum, Hines has not alleged a plausible basis for a § 1983 claim.

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Hines leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim. The dismissal is without prejudice to Hines filing an amended complaint against an appropriate defendant or defendants based on the events that occurred at Chester County Prison. An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/Petrese B. Tucker**
_____
**PETRESE B. TUCKER, J.**

---

[5] To the extent Hines intended to raise claims under state law, as well as federal law, he has not stated a claim for the same reasons. Specifically, he has not alleged any facts suggesting that the Defendants, through their actions or inactions, subjected him to harm during his incarceration at the Chester County Prison or otherwise.